FILED
___O'clock & ___ min
JAN 23 2007
United States Bankruptcy Court
Columbia, South Carolina (6)

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 06-04180-JW |
| | Chapter 13 |
| Rebekah Eugene Raybon, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court on the chapter 13 trustee's ("Trustee") objection to Rebekah Eugene Raybon's ("Debtor") proposed chapter 13 plan ("Plan"). Trustee opposes confirmation of Debtor's Plan pursuant to 11 U.S.C. § 1325(b)(1)[1] on grounds that Debtor is not devoting all of her projected disposable income to her Plan in that Debtor has not included projected annual tax refunds. Pursuant to Fed. R. Bankr. P. 3015 and SC LBR 3015-1 and Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[2]

## FINDINGS OF FACT

1. Trustee is the chapter 13 trustee for Debtor. Debtor is above the median income[3] for the State of South Carolina and filed for relief under chapter 13 of the Bankruptcy Code, as revised by the Bankruptcy Abuse and Consumer Protection Act of 2005 ("Reform Act"). See Pub L. No. 109-8 (2005) (codified in scattered sections of 11 U.S.C.). Pursuant to Fed. R. Bankr. P. 1007, Debtor completed Official Form B22C, used by chapter 13 debtors to calculate income and certain expenses allowed by § 707(b)(2) (hereinafter the "Means Test").

---

[1]  Future references to the Bankruptcy Code shall be made by section number only.

[2]  To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

[3]  Debtor's Means Test income is $73,866.50 per year; however, her actual income is $67,853.92 per year. It appears that one of the anomalies produced by the means test is that a debtor who is paid bi-weekly, such as Debtor, may have her means test income distorted upward or downward depending upon when a debtor files for bankruptcy within her pay cycle. Debtor also received a retroactive pay raise during the six months prior to the filing of the petition, which also distorted her income.

1

2.      Debtor's Plan proposes a one (1%) percent distribution to her unsecured creditors who are owed an estimated $78,984.23.

3.      Debtor's Means Test and Schedule I reflect that Debtor pays $1,712.71 per month in state and federal taxes. Debtor is single and has no dependants. Her pay records reflect that she claims one exemption and Debtor does not appear to be withholding an amount in excess of the withholding provided by state and federal law.

4.      Notwithstanding claiming a single exemption, Debtor has historically received significant state and federal tax refunds.[4] Trustee estimates that these refunds average between five thousand and six thousand dollars per year and that Debtor will continue to receive these refunds for the duration of this case. Debtor does not dispute that she would continue to receive tax refunds for the duration of the case and, on her Schedule I, she provides a monthly credit of $145.00 to her income to reflect her anticipated tax refund of $1,740.00 per year.

5.      Trustee opposes confirmation on grounds that Debtor's projected disposable income should include all of Debtor's future projected tax refunds to fund the Plan. Based upon Debtor's historic tax refunds, Trustee asserts that Debtor's Plan should provide for payments of $294.00 per month for a period of 60 months. Debtor contends such an increase in monthly payments is not feasible based upon her actual income and is not proper since her withholdings are reasonable and proper under the Means Test.

## CONCLUSIONS OF LAW

In this case, the Court must examine whether § 1325(b)(1) requires Debtor to adjust her current tax withholdings in order to increase her monthly plan payment because she has a history of receiving substantial tax refunds. See Campbell v. Campbell (In re Campbell), C/A No. 95-

---

[4]     These refunds are not accounted for by the Means Test since they appear to have been received more than six months prior to the petition date.

2

73966-W, Adv. Pro. No. 95-8301-W, slip op. at 14 (Bankr. D.S.C. Apr. 29, 1996) (finding, in a chapter 7 case and within the context of an action under § 523(a)(15), that the receipt of tax refunds provides an indication of an ability to pay debts under § 1325(b)). Section 1325(b)(1) requires Debtor to devote her "projected disposable income" to her chapter 13 Plan for the "applicable commitment period,"[5] when faced with an objection by Trustee or general unsecured creditors. These concepts have been subject to various interpretations since the effective date of the Reform Act. In Cushman, this Court found that "applicable commitment period" was a temporal requirement and required a debtor to perform in her plan for a set period of time. See In re Cushman, 350 B.R. 207 (Bankr. D.S.C. 2006). In Edmunds, this Court joined with the majority of jurisdictions in finding that "projected disposable income" should be a reflection of income and expenses to be expended during the applicable commitment period. See In re Edmunds, 350 B.R. 636 (Bankr. D.S.C. 2006).

As discussed in Edmunds, projected disposable income is a calculation of income less expenses. Income and expenses under § 1325(b) are forward-looking concepts that are not necessarily tied to the mathematical calculation performed in Form B22C. See Edmunds, 350 B.R. at 643-646. Due to the unusual facts of this case, Debtor's income reflected on Form B22C is substantially higher than her actual income based upon anomalies in her receipt of income during the six month period prior to the petition date. However under the Edmunds decision, Trustee is only asking the Court to consider Debtor's actual post-petition income reflected on Schedule I. Therefore, the amount of Debtor's income is not at issue in this case.

With regard to the expense side of the equation, Congress has divided expenses into two categories- applicable expenses and actual expenses. See id. at 644. Debtor's tax expenses fall into the category of an actual expense and she bears the burden of demonstrating that these

---

[5] Debtor's Plan complies with this second component in that she has proposed a 60 month plan.

expenses are actual, reasonable, and necessary. See id. at 645. It appears that the taxes reflected in Debtor's calculation are Debtor's actual taxes reflected in her pay records. See 26 U.S.C. § 3402(a)(1) (mandating that a debtor's employer withhold from her wages the amount set forth in the I.R.S.'s tax table and pursuant to withholding exemptions allowed by law); S.C. Code Ann. § 12-8-520(A) (West 2000). Also, there is no evidence that Debtor is purposefully over-withholding to create a quasi-savings account or that Debtor is otherwise manipulating her withholdings to her advantage. These taxes are also not clearly unreasonable as Debtor is withholding the amount she is allowed to withhold under applicable law. See 28 U.S.C. § 3402(f)(1)(A) (allowing an individual to claim an exemption for herself in estimating taxes to be withheld from wages); S.C. Code Ann. § 12-8-1010(A)( (same). Finally, these expenses are necessary. See Internal Revenue Manual 5.15.1, Financial Analysis Handbook at 5.15.1.10, Other Expenses (05-01-2004) (stating taxes are necessary if they are for current federal, FICA, Medicare, state and local taxes).

The question for the Court is whether the amount presently deducted for taxes from Debtor's pay equals her projected *actual* tax liability. Trustee argues that Debtor ultimately paid far less in taxes in prior years, as much of the amount withheld was returned to Debtor as tax refunds. However, the amount of any tax refund, if any, for Debtor during the applicable commitment period is still unclear in this case at this point in time. In addition, Debtor's receipt of a tax refund in any given year is contingent on a number of factors that may vary from year to year. For instance, Debtor estimates that her refund in the coming year will be substantially less based upon an early withdrawal from her 401(k) plan. Debtor's refund could also vary based upon her allowable charitable contributions, changes to her pay, the payment of interest on her variable rate home loan, changes in the tax law, or numerous other events that cannot be

4

completely and accurately predicted on the petition date. Without Debtor withholding the amount allowed by applicable law, Debtor could be liable for state and federal taxes if one of these variables change, thus jeopardizing Debtor's ability to perform under her proposed Plan. Under the facts of this case, the Court recognizes that Debtor may not be able to accurately predict her tax liability for a five year period at this point in time.[6] Given the uncertainty of the amount of the tax refund and based upon the totality of facts of this case, the Court does not find that Debtor's estimate of her taxes to be incorrect based the information available at this time. See In re Barcerowski, 353 B.R. 581 (Bankr. E.D. Wis. 2006) (finding a debtor should estimate, to the best of his ability, his actual tax liability for purposes of § 1325(b)); In re Otero, 48 B.R. 704, 708 (Bankr. E.D. Va. 1985) (finding that the application of § 1325(b) is within the court's discretion based upon the non-mandatory wording of the section). Therefore, Debtor has met her burden of proof and the amount of the Plan payment is currently sufficient to allow confirmation, subject to the requirements of this Order.

Despite finding that Debtor may reduce her projected disposable income by her current expenses for taxes, any refund that she receives during the applicable commitment period will nevertheless constitute disposable income for purposes of § 1325(b)(1). See In re Risher, 344 B.R. 833 (Bankr. W.D. Ky. 2006). Trustee projects that Debtor will continue to receive tax refunds throughout this case and the Court is persuaded that refunds in some amount are likely to continue during Debtor's applicable commitment period. See In re Schiffman, 338 B.R. 422, 430 (Bankr. D. Or. 2006) (finding, in a pre-Reform Act case, that confirmation may be

---

[6] Debtor's Schedule I anticipates a refund that will impact her income by $145.00 per month. Form B22C does not indicate a tax refund. The tax withholding figures on Form B22C are exactly the same as those on Schedule I even though the gross income amount on those two documents is significantly different. Trustee asserts that the $145.00 per month estimated impact is insufficient and therefore requests that Debtor commit more disposable income to the Plan. This matter came before the Court in December of 2006 and therefore, Debtor had not yet prepared her tax returns and her 2006 refund is unknown. Trustee's arguments are based on the refunds for 2005 and prior years.

conditioned on the submission of future tax refunds based upon evidence that the debtor received substantial refunds in the years prior to the petition date); In re Kuehn, 177 B.R. 671, 672-673 (Bankr. D. Ariz. 1995) (relying on In re Anderson, 21 F.3d 355 (9th Cir. 1994) and finding that confirmation may be conditioned upon the submission of future tax refunds if such refunds are projected). These refunds are the product of Debtor's wages and are property of the estate under § 1306(a)(1) and (2) and are income under § 1325(b)(2). The majority of courts that have considered the issue have concluded that a debtor should be required to devote this income to her plan. See In re Freeman, 86 F.3d 478 (6th Cir. 1996); In re Midkiff, 342 F.3d 1194 (10th Cir. 2003); In re Zuehlke, 298 B.R. 610, 614 (Bankr. N.D. Iowa 2003) (finding income tax refunds and consistent over-withholdings should be included as income); In re Nelson, No. 97-03710S, slip op. at 5-6 (Bankr. N.D. Iowa Mar. 16, 1998), aff'd, 223 B.R. 349 (8th Cir. BAP 1998); In re Jones, 301 B.R. 840, 845 (Bankr. E.D. Mich. 2003); In re Sohn, 300 B.R. 332 (Bankr. D. Minn. 2003); Campbell, slip op. at 14 (finding that tax refunds should be considered as income for purposes of § 1325(b)). As discussed in Risher, the amendments to § 1325(b) do not alter the status of a post-petition tax refund as income that should be devoted to a chapter 13 plan when faced with an objection by a chapter 13 trustee.[7] See Risher, 344 B.R. at 836-837. This Court concurs with Risher and finds, based upon a plain reading of § 1325(b)(1), that post-petition tax refunds are income for purposes of § 1325(b)(1) that must be devoted to a chapter 13 plan when faced with an objection by a chapter 13 trustee or general unsecured creditor.[8]

---

[7] Although the court in Risher adopted a local rule requiring debtors to remit post-petition tax funds to the chapter 13 trustee, other jurisdictions require debtors to devote this income to a plan based upon a plain reading of § 1325(b)(1). See Jones, 301 B.R. at 845; Zuehlke, 298 B.R. at 614.

[8] As a matter of practice, the chapter 13 trustees in this District would seek to recover any substantial post-petition tax refund in pre-Reform Act cases. Arguably a purely mechanical application of the Means Test would change this practice and would appear to dictate that a debtor devote this irregular, unknown, and unrealized income to a plan on a monthly basis but, as discussed in Edmunds, this result could frustrate a debtor's ability to propose a feasible plan. See Edmunds, 350 B.R. at 647.

To prevent the need for an immediate post-petition modification once the actual refund amount is known each year and in the interest of justice, the Court finds that Debtor shall provide Trustee with a copy of her state and federal tax returns within ten (10) days after submitting such returns to the applicable taxing authority.[9] Debtor shall also submit all future state and federal income tax refunds to the Trustee during her applicable commitment period, less the $145.00 monthly credits provided for in Debtor's Schedule I.[10] Debtor shall submit such refunds to Trustee no later than twenty (20) days after her receipt of such funds or she shall provide Trustee with a certification that she was not entitled to a refund. Alternatively, Debtor may make a motion within thirty (30) days after she files for a state and federal refund for an order modifying her obligations under this Order and the corresponding confirmation order upon a showing that the refund is reasonably necessary to be expended for her maintenance or support pursuant to § 1325(b)(3). These tax refunds shall not be considered to reduce Debtor's obligation under her chapter 13 plan but are in addition to Debtor's plan payments until such time as unsecured creditors are paid in full or Debtor's Plan is fully performed according to its terms. Debtor's Plan shall be confirmed by separate order, which is consistent with the terms and conditions of this Order, to be submitted by Trustee within ten (10) days from the entry of this Order.[11]

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
January 23, 2007

---

[9] The obligations imposed herein do not modify Debtor's obligations under § 521(f).
[10] Trustee and Debtor may agree to a lesser amount than all of the refunds due Debtor and submission of the refunds shall be pro rated for the 2006 tax year based upon the percentage of 2006 that Debtor was in bankruptcy.
[11] Alternatively, Debtor may submit an amended plan within ten (10) days from the entry of this Order which is consistent with the terms of this Order.